57 CCPA

**Application of Alfred C. WHITON.**

**Patent Appeal No. 8219.**

United States Court of Customs
and Patent Appeals.

Feb. 12, 1970.

Stanley Litz, William M. Epes, King of Prussia, Pa., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and RAO, Chief Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection under 35 U.S.C. § 103 of claims 1–9 appearing in appellant's application[1] as unpatentable over Ford[2] or Ford, et al.[3] in view of an Australian patent[4] and a publication by Hill.[5]

## THE INVENTION

It appears from the record that polyvinylidene fluoride polymers (hereafter PVDF) containing at least 95% vinylidine fluoride have found use in the manufacture of various extruded and molded plastic articles which possess the desirable property of being serviceable at temperatures up to 300° F. in the presence of acids, alkalies or strong oxidizing agents. In the past, such articles have been relatively rigid, due to the crystalline nature of the above vinylidene fluoride polymer. To provide a more flexible, easily worked form of PVDF and thereby extend its usefulness to other areas, appellant "plasticizes"[6] PVDF

---

1. Serial No. 219, 742, filed Aug. 27, 1962, for "Chemical Composition."

2. U. S. Patent 2,468,054, issued April 26, 1949.

3. U. S. Patent 2,435,537, issued February 3, 1948.

4. Australian Patent 150,608, issued June 14, 1951.

5. Hill "High Molecular Weight Plasticizers for P.V.C.," British Plastics, Vol. 32, pages 74–77 and 89 (February 1959).

6. Appellant's specification explains:

It is well known in the art that some polymers can be modified to increase flexibility or to reduce stiffness by adding to the polymer a material known in the art as a plasticizer. An exact definition of the term plasticizer which would include all materials which may find use as plasticizers is not available. In general, however, a satisfactory plasticizer for a particular polymer is a material which shows the properties of compatability, permanence,

with certain low molecular weight, linear saturated polyesters, as reflected in representative claim 1:

1. A composition comprising a mixture consisting of a major proportion of polymeric vinylidene fluoride having a crystalline structure and containing more than 95 mol percent of vinylidene fluoride with a minor proportion of a linear saturated polymeric polyester consisting essentially of recurring units of the formula

$$-\overset{\overset{\displaystyle O}{\|}}{C}-(CH_2)_n-\overset{\overset{\displaystyle O}{\|}}{C}-O-R-O$$

in which n is an integer from 4 to 8 inclusively and R is an alkylene group having from 4 to 7 carbon atoms inclusively, said polyester having a molecular weight of from about 1100 to about 5000 and a boiling point above about 400°C.

Articles prepared from the above composition, appellant states, possess "high flexibility," particularly at low temperatures, "good heat stability," and "absence of properties evidencing incompatibility of plasticizer with polymer, such as exudation, opaqueness, bubbles, and surface imperfections," as well as low loss of plasticizer resulting from volatilization.

## THE REJECTION

The examiner rejected the claims as unpatentable over Ford or Ford, et al. in view of Hill and the Australian patent. Both Ford patents, which relate in general to processes of preparing homopolymers and copolymers of vinylidene fluoride, disclose that those polymers can be mixed with other ingredients, such as plasticizers. Ford '537 states, for example:

The polymers of vinylidene fluoride described herein are adapted to a wide variety of uses because of their excellent combination of toughness and high thermal stability. For example, they can be shaped into films, fibers, foils, sheets, ribbons, bands or rods, tubing and massive articles under elevated temperatures and pressures, or they can be applied as coatings to fabrics, leather cellulose derivative products, etc. In the form of films polyvinylidene fluoride is useful as a photofilm. Polyvinylidene fluoride can be used alone, or it can be mixed with, or it can be prepared in the presence of other ingredients such as cellulose derivatives, resins, plasticizers, modifiers, pigments, filling materials, dyes, etc. For certain electrical applications the polymer is well suited for the bonding

stability to heat and hydrolysis and efficiency in producing flexibility when mixed with the polymer. * * * The specification further points out that the search for a suitable plasticizer for PVDF has been complicated by its crystalline nature which precludes compatibility of the polymers with many known plasticizers for other vinyl polymers. In that respect, PVDF is said to resemble its chlorine analog, polyvinylidene chloride (PVDC), also a crystalline material which, according to appellant's specification, is well known to be incompatible with usual plasticizer materials. Moreover, says appellant, another factor which has restricted materials usable as plasticizers for PVDF is the polymer's high fabrication temperature—upwards of 500° F. As a consequence, appellant states, plasticizers suitable for use with other vinyl polymers, such as

PVDC or polyvinyl chloride (PVC) which are fabricated at lower temperatures below 400° F., may not be suitable for use with PVDF because they lack requisite heat stability and are highly volatile at PVDF fabrication temperatures.

We should note at this point that appellant's statement in his specification that "temperatures above about 500° F. are required" in the fabrication of PVDF appears to be contradicted by examples appearing later in his specification, where temperatures of 350° F. and 392° F. were used in the formation of films. It also appears to be contradicted by the Ford, et al., '537 patent, which discloses the softening temperature of PVDF to be 145–160° C. (293°–320° F.), and film pressing temperatures of presumably unplasticized PVDF to be 160–190° C. (320–374° F.) or 200° C. (392° F.).

of mica flakes into tough, coherent shapes. In some of these uses the polyvinylidene fluoride is advantageously combined with or prepared in the presence of plasticizers, modifiers, softeners, dyes, pigments, fillers, and natural resins, etc.

Recognizing that neither Ford reference mentions any specific plasticizers suitable for use with PVDF, the examiner turned to Australian and Hill for their disclosure that polyesters of the type recited in the claims are advantageous for plasticizing *polyvinyl chloride* (PVC). Australian's polyester, for example, provides a plasticized composition in which the plasticizer is non-migratory, substantially non-volatile, and readily compatible with PVC. Said plasticized composition "remains flexible at lower temperatures than known compositions." Hill similarly discloses that certain polyesters commonly used in the plasticization of PVC, some of which are within the scope of the instant claims, are, in general, migration-resistant and of low volatility: [7]

> Provided the necessary requirements associated with compounding and compatibility are fulfilled, the introduction of high molecular weight plasticizers into p. v. c. systems shows two advantages compared with the simple low molecular weight ester systems. These are: (1) reduced volatility of plasticizer from the compound; and (2) reduced loss of plasticizer into other media, whether solid or liquid, in *certain specific instances*. (Emphasis quoted).

The examiner thought the principal issue to be "whether it is patentable to plasticize a known polymer with a known class of plasticizers," and saw "no reason whatsoever to believe that a plasticizer for one polymer would not be expected to plasticize another polymer." Contrary to appellant's arguments, he did not view the Ford references to present an unsolved problem in merely disclosing that PVDF can be mixed or combined with plasticizers. Rather, he thought that, in view of the disclosure he found in the secondary references that polyester plasticizers of the type recited in the claims process at high temperatures [8] and are of low volatility and migration, it would be obvious to select those plasticizers conventionally used with PVC for use with "analogous" PVDF when it is known that the plasticizer should possess those properties to be of optimum usefulness in PVDF.

The board agreed, finding "sufficient teaching * * * [in Hill and Australian] of those desirable properties which would suggest to one skilled in the art the application of these [polyester] plasticizers with other polymeric materials."

### OPINION

Here, as below, appellant urges that the Ford disclosures of mixing PVDF with a plasticizer are mere invitations to the polymer chemist to experiment in a vast field of polymer technology and that those disclosures in fact teach nothing to one skilled in the art. There is no suggestion in any of the references, appellant says, that any of the known plasticizers for PVC would necessarily be suitable as plasticizers for PVDF much less that the particular polyesters recited in the present claims would be so suitable. In view of the basic differences in physical structure between predominantly crystalline PVDF and predominantly amorphous PVC, appellant submits that it would not be obvious to one of ordinary skill in the art which, if any, of the many known plasticizers for PVC would be compatible with PVDF.

7. The polyesters disclosed by Hill are not of universal compatibility with PVC, however, the reference noting that PPA (a polyester of propylene glycol and adipic acid, not within the scope of the present claims) is of "distinctly limited compatibility."

8. Apparently the examiner here was relying on Hill's disclosure that the PVC and polyester composition was processed at 170° C (338° F.).

The solicitor responds by pointing out:

Bearing in mind that each secondary reference discloses the instantly claimed polyester plasticizers, albeit for use with PVC rather than with PVDF, it would appear reasonable for one of ordinary skill in the art to conclude that the properties which those plasticizers manifest in the presence of PVC, such as low volatility and migratory rate and processing at higher temperatures * * *, would be manifested in the presence of PVDF, although possibly not to the same extent. * * *

No doubt those enumerated factors would be persuasive evidence of obviousness (appellant does not appear to seriously contend otherwise) if appellant had not convinced us that there still exists one critical defect in the reasoning employed by the Patent Office. Neither the examiner nor the board has given any reason, or pointed to anything in the references on which they rely, to justify concluding that one of ordinary skill in the art would recognize the instant polyesters to be *compatible* with PVDF. Indeed, appellant's statements in his specification, and argument based thereon, to the effect that one would not expect a compatible plasticizer for PVC to necessarily compatibly plasticize PVDF because of differences in micro structure and crystallinity between those two polymers, has not really been controverted by the Patent Office, save perhaps for the examiner's sweeping, conclusory findings that (1) there is "no reason whatsoever to believe that a plasticizer for one polymer would not be expected to plasticize another polymer" and that (2)

PVC and PVDF are somehow "analogous."

We find no substantial evidence of record to support the first finding of the examiner. What evidence there is of record tends rather to the opposite conclusion. Appellant submitted an affidavit augmenting the data in his specification which establishes that some 44 or so well known plasticizers for PVC are not satisfactorily compatible with PVDF because they yielded compositions that were, inter alia, hazy, streaky, bubbly, discolored or opaque in appearance. Appellant's argument that, in view of that evidence, compatibility of the polyesters with PVDF was unpredictable and unexpected[9] seems plausible, at least in absence of evidence showing that compatibility would be obvious to those in the art. See In re Cormany, 407 F.2d 900, 56 CCPA 992 (1969); In re Tomlinson, 363 F.2d 928, 53 CCPA 1421 (1966). While obviousness does not require absolute predictability, In re Pantzer, 341 F.2d 121, 52 CCPA 1135 (1964), at least some predictability is required. In re Naylor, 54 CCPA 902, 369 F.2d 765 (1966). We find nothing in the references relied on which would afford one of ordinary skill reason to anticipate that a trial of the polyester plasticizers disclosed by Hill or Australian with the PVDF of Ford would be successful in producing a plasticized composition fulfilling the criterion that the resin and plasticizer be "compatible."

Insofar as the examiner's finding of "analogy" is concerned, he sought to support that finding by noting that PVC and PVDF are "used for the same pur-

---

9. The examiner and solicitor criticize appellant's affidavit for its failure to include data on polyesters outside the scope of polyesters recited in the claims. As we noted earlier, Hill makes it clear that at least one polyester outside the scope of the claims is incompatible even with PVC. In view of that, it is not clear to us why one of ordinary skill in the art would necessarily regard other polyesters than those claimed to be suitably compatible with PVDF. Proof that other polyester plasticizers for PVC would not compatibly plasticize PVDF, might have been stronger evidence that the compatibility of the claimed polyesters was unexpected. We feel, however, that the evidence which was shown sufficiently rebutted the broad allegation by the examiner as stated above. Of course, there is no requirement that the applicant prove that only his claimed plasticizers were compatible.

poses"—films, sheets, rods and the like. However true that may be, it is not clear to appellant, nor is it to us, how that observation establishes such an analogy or community of properties between amorphous PVC and crystalline PVDF on a molecular or microstructure level as would suggest to one of ordinary skill in the art that what compatibly plasticizes PVC will also compatibly plasticize PVDF.

Considering all the matters raised below and by the solicitor, we do not think that the Patent Office has established that the subject matter as a whole was obvious to one of ordinary skill in the art. The decision is reversed.

Reversed.